UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES CLOWER,

    Plaintiff,

v.                                                        Case No. 2:04-cv-95
                                                         HON. RICHARD ALAN ENSLEN

GEORGE PENNELL, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff prisoner James Clower filed this civil rights action under 42 U.S.C. § 1983 against several employees at the Baraga Maximum Correctional Facility (AMF): Warden George Pennell, Deputy Warden Darlene Edlund, Assistant Deputy Warden Luetzow, Captains Cerroni, Lafay and Chappel, Lieutenants Sartorelli and Koskinen, Sergeants Perry and Green, and Nurses Richards, Hyrkas, Nancy Doe, Lewis, Chosa and Jane Doe.

        Plaintiff alleges that on May 20, 2002, he was confined in segregation. Plaintiff states that it became necessary for corrections staff to extract plaintiff from his cell and place plaintiff in "standing-hard-restraints." An Emergency Response Team (ERT) allegedly gassed plaintiff and rolled him to the health care room. Plaintiff was strip searched. Plaintiff was then placed in leg irons and belly chains by defendants Koskinen, Sartorelli and Richards, under the supervision of defendant Cerroni,. Plaintiff asserts that the restraints were placed too tightly. Plaintiff expressed his concern that he would not be able to use the toilet because the right cuff impeded the blood flow and circulation in his hand. Plaintiff alleges that defendant Richards checked the restraints but did

not do anything to reduce the tightness. Plaintiff maintains that defendants Cerroni, Koskinen and Sartorelli placed him inside the strip cell, which was coated with chemical agent residue.

Plaintiff alleges that he complained repeatedly between May 20 and May 28, 2002, about the pain, the swelling in his wrists and knees, and the need to use the toilet. Plaintiff's requests for medical care and to have his restraints adjusted were ignored. As a result, plaintiff maintains that he was forced to defecate on the floor.

Plaintiff states that defendant Edlund was in plaintiff's wing between May 20 and May 25, 2002, to talk with prisoners who were in restraints. Plaintiff's pleas to talk with defendant Edlund were ignored. Between May 20 and May 26, 2002, plaintiff claims that he repeatedly complained to medical staff about the pain and his swollen wrist and knees. Plaintiff states that his complaints were ignored. Plaintiff states that on May 26, 2002, Corrections Officer Gravier told plaintiff that he needed immediate medical care and adjustment of the right cuff, after plaintiff showed her his swollen and damaged wrist. Plaintiff's right cuff was loosened by defendant Hyrkas and his wrist was treated, but he received nothing for the pain. Defendant Hyrkas refused to loosen plaintiff's belly chains, telling plaintiff that it was a custody issue. Plaintiff continued to complain that his restraints were too tight. On May 27, 2002, plaintiff complained to defendant Richards, who agreed that the restraints were too tight and indicated that he would have custody staff loosen them. Plaintiff states that defendant Richards, however, refused to have custody staff adjust the chains so that plaintiff could use the toilet and sink.

On May 28, 2002, the restraints were removed. Plaintiff states that he could hardly stand or walk. His knees were stiff, swollen and in pain. Further, plaintiff maintains that the right cuff damaged the nerves in his hand. Plaintiff alleges that he experienced chronic back pain. Plaintiff maintains his knees and wrist swell and he experiences twitching in his right hand. Plaintiff

asserts that on June 5, 2002, he was seen by defendant Jane Doe. Jane Doe only gave plaintiff six ibuprofen tablets, which failed to treat his swelling and pain. Plaintiff asserts that he refused further medical care.

On August 12, 2002, plaintiff again had to be restrained by staff. This time, plaintiff claims that defendant Koskinen and an ERT rushed plaintiff after they gassed him. Plaintiff was restrained and punched in the face. Someone pressed their fingers into plaintiff's eyes. Plaintiff was again placed in hard restraints. Plaintiff maintains that the restraints were very tight and that he could not stand, walk, use the sink, bend his legs or use the facilities. Plaintiff claims that his eyes and his jaw were severely swollen and he was unable to see out his left eye. According to plaintiff, he sustained obvious injuries, but defendant Richards offered no medical care. Plaintiff claims that the restraints were deliberately misused. Plaintiff claims that his repeated requests to have his restraints loosened were denied.

On August 16, 2002, under defendant Perry's supervision, an ERT entered plaintiff's cell and attacked plaintiff. Plaintiff claims that he was hogtied so that his lower legs were pinned against his thighs. Plaintiff claims that the nurses refused to treat him during their rounds until August 20, 2002, when he was transferred to I-Max Prison. Plaintiff claims that while at I-Max, he was treated on August 27, 2002, by Dr. Urban who immediately placed plaintiff on medication for the pain and swelling.

Defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and motions to dismiss under Federal Rules of Civil Procedure 12. To resolve the issues presented, the undersigned believes that it is necessary to review the affidavits and materials filed by the parties. Therefore, defendants' combined motion to dismiss and for summary judgment should be treated solely as a motion for summary judgment pursuant to Rule 56

of the Federal Rules of Civil Procedure. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. Id. at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." Id. at 324 (quoting Fed. R. Civ. P. 56(e)). While the evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." Id. at 252. See also Leahy v. Trans Jones, Inc., 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); cf. Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

  Defendants Edlund, Luetzow, Cerroni, Chappell, Sartorelli, Green, Richards, Hrykas, Hulkoff, Lewis, LaFave and Pennell argue that plaintiff failed to exhaust his grievance remedies against each of them. Plaintiff argues that he did exhaust his grievance remedies against each defendant. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. See Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983 (2002); Booth v. Churner, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. See Porter, 122 S. Ct. at 988;

Booth, 532 U.S. at 741; Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir.), cert. denied, 531 U.S. 1040 (2000); Freeman v. Francis, 196 F.3d 641, 643 (6th Cir. 1999). A district court must enforce the exhaustion requirement sua sponte. Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir.), cert. denied, 525 U.S. 833 (1998); accord Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available state remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. Brown, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir.), cert. denied, 531 U.S. 1040 (2000). A prisoner must make particularized averments as necessary for the district court to determine what, if any, claims have been exhausted or what has been done in an attempt to exhaust the claims. Id.

Grievances pertaining to racial or ethnic discrimination, staff brutality or corruption may be grieved directly to Step III. MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ II (effective Oct. 11, 1999 and Nov. 1, 2000). The Director of the Michigan Department of Corrections or his designee may respond directly to the grievance, request an investigation, or return it to the prisoner for filing at Step I. Id. ¶¶ HH-II. The grievance process must be resolved within 90 days. MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ V (effective November 1, 2000). A 15-day extension may be requested of the grievant by the grievance coordinator or the prisoner affairs section at one of the steps in the grievance process.

Plaintiff claims that he submitted a direct Step III grievance on January 15, 2004, to the Director's Office. Plaintiff has submitted a copy of that grievance. The grievance names each defendant and is similar to the complaint that was filed in this matter. Plaintiff claims that he never received a response to this grievance or any of the other grievances that he sent directly to the

Director's Office which relate to the subject matter of this complaint. Defendants have not addressed plaintiff's claim that he submitted direct Step III grievances to the Director's Office that went unanswered. Accordingly, it appears that plaintiff has satisfied his burden of showing exhaustion of grievance remedies.

Plaintiff claims that the restraints were too tight and that he was denied proper medical care by health care staff who checked his restraints. Plaintiff asserts that the supervisory defendants violated his rights by refusing to order staff to properly adjust his restraints. Plaintiff claims that he was denied medical care for his serious injuries. Plaintiff asserts that defendants violated his Eighth Amendment rights. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting Rhodes, 452 U.S. at 346). The deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities.'" Rhodes, 452 U.S. at 347; see also Wilson v. Yaklich, 148 F.3d 596, 600-601 (6th Cir. 1998), cert. denied, 119 S. Ct. 1028 (1999). Moreover, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." Rhodes, 452 U.S. at 348. The federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. Estelle v. Gamble, 429 U.S. 102, 103-04 (1976). A claim under the Eighth Amendment comprises an objective and subjective component: (1) a sufficiently grave deprivation

and (2) a sufficiently culpable state of mind.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Woods v. LeCureux, 110 F.3d 1215, 1222 (6th Cir. 1997).  The deliberate indifference standard applies to all claims challenging conditions of confinement, which include claims of inadequate medical care. Wilson v. Seiter, 501 U.S. 294, 303 (1991).  For a medical claim, the Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  Estelle, 429 U.S. at 104-05; Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995).

The deliberate indifference standard "describes a state of mind more blameworthy than negligence."  Farmer, 511 U.S. at 835.  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.  Id. at 837.  The reason for focusing on the official's mental attitude is to isolate those defendants who inflict punishment.  Id. at 839.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment.  Estelle, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  Sanderfer, 62 F.3d at 154-55; Ward v. Smith, No.

95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. Gabehart v. Chapleau, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir.1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Id.

The affidavits and Critical Incident Reports describe the circumstances surrounding the two instances that necessitated an ERT to enter plaintiff's cell and place plaintiff in hard restraints. Plaintiff has a history of assaulting staff and damaging property. On May 20, 2002, plaintiff refused an order to come to his cell door to be restrained and removed from his cell. Plaintiff removed his soft restraints and barricaded his door with his mattress. He tore his bed sheets and bed coverings and used them with his restraints to make a net which he attached to his cell vent, light fixtures and sprinkler head, allowing him to lay above his cell door waiting to attack staff when they entered his cell. Prior to entry into plaintiff's cell, staff located plaintiff's position with a flashlight. One team member had to use his shield to knock plaintiff down from over the door before the other team members could move into the cell. It was discovered that plaintiff had fashioned a pen with paper around it to make a weapon.

Chemical agents were used and hard restraints were applied because plaintiff had demonstrated that he could remove soft restraints. Plaintiff was still considered a danger to staff while restrained due to his assaultive behavior. Defendant Richards checked the restraints and

indicated that they were applied properly. Plaintiff was moved to a new cell where chemical agents had not been used. Moreover, the type of chemical agents used by the prison at that time dissipated in 30 minutes. Defendants have stated that plaintiff should have been able to use the toilet and sink. Plaintiff refused to have his restraints checked later that day. On May 21, 2002, plaintiff's restraints were checked. The nurse found that the restraints were properly applied. Plaintiff also refused to have his restraints checked during some of the rounds on May 21, 23, 24 and 25, 2002. On one round during May 25, 2002, one cuff was loosened by staff. The restraints again were adjusted on May 26, 2002. The restraints were removed on May 28, 2002.

On August 12, 2002, plaintiff broke his cell window and refused to come to the door to be restrained. An ERT entered plaintiff's cell. Plaintiff had placed sheets and blankets in a manner that obstructed staff vision so that plaintiff could not be seen in his cell. A mop was used to pull down some of the blankets and sheets. Plaintiff was observed with a piece of angle iron approximately three feet long and sharpened at the end. Plaintiff assaulted the team members with his homemade weapon as they entered the cell. Sergeant Hares was stabbed several times by plaintiff and had to be treated at the hospital for superficial wounds. Plaintiff was restrained and placed in standing hard restraints. Other homemade weapons were discovered hidden in plaintiff's hair and in his books. On August 16, 2002, plaintiff was caught attempting to pull his cell light off the wall. Plaintiff had previously used his cell light fixture to make weapons to attack staff. Plaintiff's restraints were adjusted twice. One time they were tightened because plaintiff was able to break his cell light while he was restrained.

It is undisputed that defendants needed to enter plaintiff's cell on these two occasions and restrain plaintiff. Plaintiff alleges that excessive force was used, he was restrained too tightly causing injury and he was denied medical care. There exists no evidence to support plaintiff's

claims of excessive force and denial of medical care. Plaintiff's medical records show that he made complaints of soreness and swelling. In one notation, the nurse wrote "he cont[inues] to demonstrate aggressive behavior toward custody and requires rush teams. He will certainly be sore after such restraints." Medical record notation June 12, 2002, attached as an exhibit to defendants' brief (docket #62). Objectively, plaintiff was normal with occasional presentation of minor injuries such as abrasion or muscle strain. Plaintiff was given Motrin on occasion for pain. Further, the records show that while plaintiff was wearing restraints, the restraints were monitored by medical staff. Medical staff had the restraints loosened if they were too tight. In fact, the medical records show that plaintiff was constantly being monitored by medical staff. Plaintiff received a number of x-rays and they revealed no abnormalities. Plaintiff's condition was remarkably normal throughout this time period. Plaintiff has not rebutted defendants' affidavits or exhibits. Plaintiff has failed to respond to defendants' dispositive motions, despite the Court's issuance of an order granting plaintiff an extension of time to respond.

Defendants were clearly justified in using force to restrain plaintiff. On both occasions, plaintiff barricaded himself in his cell, possessed handmade weapons with the intent to assault staff, and attempted to, and did on one occasion, assault staff as they entered his cell. Defendants were justified in placing plaintiff in hard restraints because plaintiff proved that he was able to remove soft restraints or damage property while in soft restraints. Defendants appropriately monitored plaintiff's physical condition and on occasion loosened restraints if they were too tight. Plaintiff's medical records show that, at best, plaintiff sustained minor injuries that were the type of injuries that would be expected under the circumstances of having to be restrained. Plaintiff was provided Motrin for pain. In the opinion of the undersigned, plaintiff cannot show that his Eighth Amendment rights were violated under these circumstances.

Accordingly, it is recommended that defendants' motion for summary judgment (docket #61) be granted, dismissing this case in its entirety.  It is further recommended that defendants' motion to dismiss (docket #103) for failure to exhaust grievance remedies be denied, plaintiff's motion to strike the defense of failure to exhaust (docket #108) be denied, plaintiff's motion to strike defendants' exhibits (docket #86) be denied, and plaintiff's motion to continue (docket #112) be denied.

Further, if the court adopts this recommendation, the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  See McGore v. Wrigglesworth, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal.  It is recommended that should the plaintiff appeal this decision, the court assess the $255 appellate filing fee pursuant to § 1915(b)(1), see McGore, 114 F.3d at 610-11, unless plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he should be required to pay the $255 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal those issues or claims addressed or resolved as a result of the Report and Recommendation.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981).  See also Thomas v. Arn, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:   May 16, 2005